IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADRIANE GLAZIER TUROW, individually and as beneficiary of the AJJ Investment Trust and Adriane S. Homer Descendant's Trust, <br><br> Plaintiff, <br><br> v. <br><br> JOSHUA M. GLAZIER, individually and as trustee of AJJ Investment Trust and the Adriane S. Homer Descendant's Trust, DANIEL J. ABDO, and GLAZIER CORPORATION, <br><br> Defendants. | Case No. 21 CV 5756 <br><br> Magistrate Judge M. David Weisman |

### MEMORANDUM OPINION AND ORDER

The case is before the Court on plaintiff's motion to compel. For the reasons discussed below, the Court grants in part and denies in part the motion [ECF 82].

### Background

In 1997, Robert Glazier created the AJJ Investment Trust to benefit his children Joshua, Adriane, and Jordan Glazier. (ECF 82 at 1.) Robert made the AJJ Trust a limited partner in several limited partnerships he created to hold his real estate investments: Hutchinson LP, GlazCo LP, and "the Birds"—Blue Jay LP, Condor LP, Dove LP, Eagle LP, Sandpiper LP, and Sparrow LP (the "HGB Entities"). (*Id.*) Robert's company, Glazier Corp., was the general partner of each Bird limited partnership, and the AJJ Trust, Daniel Abdo, Joshua Glazier or his trust, the JMG Investment Trust, were named as limited partners. (*Id.*) When Robert died, Joshua became president and CEO of Glazier Corp. (*Id.*) Plaintiff alleges that Joshua:

> [C]oncealed and eliminated the AJJ Trust's interest in the Birds and other LPs, taking such interests for himself and Abdo; misappropriated the AJJ Trust's share of income; excluded the AJJ Trust from additional real estate investments in violation of the Bird LP agreements; converted AJJ Trust assets; and used AJJ Trust assets to pay himself excessive management fees.

(*Id.*)

## Discussion

**The Additional Glazier Entities**

Plaintiff seeks to compel defendants to produce documents about nineteen other Glazier entities—Cardinal LP, Pelican LP, Finch LP, Stork LP, Robin LP, Parrot LP, Bluebird LP, CLW Properties LLC, Glazier Bolingbrook LLC, Glazier Crestwood IV LLC, Glazier Crestwood V LLC, Glazier Elgin LLC, Glazier Flossmoor LLC, Glazier Franklin Park LLC, Glazier Franklin Park II LLC, Glazier Madison LLC, Glazier Peru LLC, Glazier Project LLC, and Glazier Pulaski LLC ("Additional Glazier Entities.") (ECF 82-16.) Plaintiff seeks: (1) corporate formation and governance documents relating to these entities (ECF 82-9, Joshua Glazier Resp. Req. Prod. ¶¶ 26, 29, 30, 32; ECF 82-10, Abdo Resp. Req. Prod. ¶¶ 10, 12, 13, 15); (2) documents and communications relating to changes in partnership interests (ECF 82-9, Joshua Resp. Req. Prod. ¶ 27; ECF 82-10, Abdo Resp. Req. Prod. ¶ 11; ECF 82-12, Joshua Interrog. Ans. ¶ 9); (3) documents relating to closing statements, valuations, and appraisals of real estate owned by these entities (ECF 82-9, Joshua Resp. Req. Prod. ¶¶ 22, 50, 51; ECF 82-11, Glazier Corp. Resp. Req. Prod. ¶¶ 12, 14; ECF 82-10, Abdo's Resp. Req. Prod. ¶¶ 6, 27, 28); and (4) documents and communications relating to fees paid by these entities to defendants or their affiliates (ECF 82-9, Joshua Resp. Req. Prod. ¶¶ 55, 56; ECF 82-11, Glazier Corp. Resp. Req. Prod. ¶¶ 16, 17; ECF 82-10, Abdo Resp. Req. Prod. ¶ 31). Plaintiff says this information is necessary to determine whether defendants complied with the "Inclusion Requirement" of the limited partnership agreements for the HGB Entities. That provision states:

> The Partnership will pursue all real estate projects of the Partners and their respective affiliates . . . during the period of time (the "Development Period") during which Abdo devotes his full business attention, and provides a full-time business commitment (as an independent contractor), to projects pursued by the General Partner and its affiliates. Real estate projects pursued during the Development Period will be pursued through this partnership or through other partnerships in which Abdo has no less than 10% partnership interest and which are governed by partnership agreements providing substantially the same terms as this Agreement.

(ECF 82-15, Eagle LPA § 3.)

Defendants first argue that the information plaintiff seeks from the Additional Glazier Entities is irrelevant because Abdo's answer to plaintiff's interrogatory No. 6 establishes that defendants did not violate the Inclusion Requirement:

> Abdo states that he never entered into either a written or verbal agreement with Glazier Corp. or any of its affiliates to provide his full-time business commitment as an independent contractor (or otherwise). Answering further, Abdo worked for a casework manufacturing company, Specialty Design Fabricators, from 1997 through 2000 and for Loya Insurance as a consultant from 2009 through 2014, and he never received compensation from Glazier Corp. or any business owned by Glazier Corp. after 2016.

(ECF 82-13, Abdo Interrog. Ans. ¶ 6.) But Abdo's answer does not address 2001-08, and the redacted 1040s he produced for 2002-07 show that he received substantial income from Glazier Corp. in those years. In short, the information defendants have produced does not appear to rule out plaintiff's claim that defendants violated the Inclusion Requirement. Thus, it is not a basis for denying plaintiff's motion.

Alternatively, defendants argue that it would be unduly burdensome for them to produce the documents plaintiff requests. Defendants say, for example, that there are more than 18,500 documents that relate to Glazier Project, LLC, which is just one of the nineteen Additional Glazier Entities. (ECF 88 at 9.)[1] Defendants did not, however, object to the contested discovery requests

---

[1] All of the pages in this brief are numbered "2," but this is the ninth page of the brief.

3

on the grounds that they were unduly burdensome. (*See* ECF 82-9, Joshua Resp. Req. Production ¶¶ 22, 26, 27, 29, 30, 32, 50, 51, 55, 56; ECF 82-10, Abdo Resp. Req. Prod. ¶¶ 6, 10-13, 15, 27, 28, 31; ECF 82-11, Glazier Corp. Resp. Req. Prod. ¶¶ 12, 14, 16, 17; ECF 82-12, Joshua Interrog. Ans. ¶ 9.) Further, even if they had, "to resist discovery as unduly burdensome, [defendants] must adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome." *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum LLC*, No. 1:04-CV-477, 2007 WL 1164970, at *4 (N.D. Ind. Apr. 18, 2007) (internal quotation omitted). "[T]he mere fact that a party will be required to expend a considerable amount of time, effort, or expense in answering the discovery requests is not a sufficient reason to preclude discovery." *Boyer v. Gildea*, No. 1:05-CV-129, 2008 WL 4911267, at *5 (N.D. Ind. Nov. 13, 2008) (quotations and alterations omitted); *see Rawat v. Navistar Int'l Corp.*, No. 08 C 4305, 2011 WL 3876957, at *8 (N.D. Ill. Sept. 1, 2011), *aff'd*, No. 08-CV-04305, 2011 WL 6097772 (N.D. Ill. Dec. 5, 2011) (stating that "Navistar must do more than make broad assertions that producing the documents would be difficult, and the fact that an exceptionally large number of documents is involved does not speak for itself on this issue").[2] The only reason defendants give for their burden objection is that the number of documents requested is large. That statement alone is insufficient to sustain defendants' burden objections. Thus, plaintiff's motion with respect to the discovery requests outlined above is granted.

---

[2] While these cases pre-date the substantive change to Federal Rule of Civil Procedure 26(b)(1), which re-introduced the consideration of proportionality in assessing the proper scope of discovery, the rule change was not "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional." Fed. R. Civ. P. 26, cmt. 2015 Amend. Here, defendants' assertion that the number of documents is large fails to establish undue burden, and similarly fails to show that the discovery is disproportional to the needs of the case.

**Other Discovery Requests**

Plaintiff also seeks production of filed tax returns for Joshua Glazier, the JMG Trust, the HGB Entities, Glazier Corp., and the Additional Entities. (*See* ECF 82-9, Joshua Resp. Req. Prod. ¶¶ 40-44; ECF 82-11, Glazier Corp. Resp. Req. Prod. ¶¶ 1-3, 10.) Plaintiff argues that Glazier Corp.'s tax returns are "critical to proving in which partnerships the AJJ Trust should have an interest," "to determine the flow of funds among the various partnerships," to determine whether Joshua, through Glazier Corp., charged the partnerships unwarranted management fees, and to substantiate the information in tax returns defendants previously produced for some of the limited partnerships and the AJJ Trust, which "contain inconsistent or conflicting information." (ECF 82 at 7-8.) But plaintiff does not explain how Glazier Corp.'s tax returns will shed light on any of these issues. Indeed, much of the financial information that plaintiff seeks would not likely be part of a tax return but rather the various entities' operating accounts.[3] As a result, the motion to compel production of Glazier Corp.'s tax returns is denied.

Plaintiff also seeks production of Joshua's tax returns and the returns of his personal trust, the JMG Trust. Plaintiff contends that these returns will "show the income Joshua earned on misappropriated funds, the management fees that Joshua charged to the AJJ Trust, as well as the salary and distributions he gave himself from entities in which the AJJ Trust had (or should have had) an interest." (*Id.* at 8.) The Court agrees with plaintiff that these returns are relevant to her claim that Joshua breached his fiduciary duties by paying himself excessive management fees.[4] Thus, defendants must produce them.

---

[3] As just a few examples, plaintiff argues that debts owed by or to Glazier Corp, would appear on the corporate tax returns, but tax returns track income and expenses, not (directly) debts owed or obligated. Plaintiff's suggestion that tax returns would help understand the "cash flow" of Glazier Corp. is similarly misplaced. (ECF 82 at 7.) *See, e.g., United States v. Adams*, 314 F. App'x. 633 (5th Cir. 2009) (explaining the role of an independent cash flow analysis and the sources of information beyond tax returns for such an analysis to test the accuracy of tax returns).

[4] Because plaintiff seeks information regarding income that Joshua may have earned, and sources of income are naturally included in tax returns, this request for tax returns does not suffer from the concerns noted *supra*.

Plaintiff also asks the Court to compel defendants to produce tax returns for the Additional Glazier Entities. She says they are relevant to her damages claims because "they will show the distributions and/or other proceeds the partners received, a portion of which the AJJ Trust should have received." (*Id.*) The Court agrees and orders defendants to produce the returns.

Next, plaintiff seeks production of unredacted versions of Abdo's tax returns, which Abdo contends are irrelevant. (ECF 82-10, Abdo Resp. Req. Prod. ¶¶ 22-24.)[5] Plaintiff says she needs the unredacted returns to determine whether defendants complied with the Inclusion Requirement of the HGB limited partnership agreements. Abdo says the documents he has already produced establish that he worked for non-Glazier Corp. entities from 1997-2000 and 2008-21 and did not work for Glazier Corp. as an independent contractor on full-time basis from 2001-07, and thus the Inclusion Requirement does not apply. Whether that is true depends on the interpretation of the Inclusion Requirement, which is not the province of this Court. Because Abdo's unredacted tax returns may shed light on what period of time, if any, constitutes the Development Period under the limited partnership agreements, he must produce them.

Plaintiff seeks production of all financial records pertaining to the HGB Entities and the Additional Glazier Entities. (*See* ECF 82-9, Joshua Resp. Req. Prod. ¶¶ 34-35; ECF 82-11, Glazier Corp. Resp. Req. Prod. ¶¶ 6-7; ECF 82-10, Abdo Resp. Req. Prod. ¶¶ 16-17.) Defendants interposed various objections but said they would produce "the appropriate financial statements for those Glazier Entities in which Glazier Corp., [Joshua] Glazier, and Abdo maintained a direct or indirect ownership interest." (*See* ECF 82-9, Joshua Resp. Req. Prod. ¶¶ 34-35; ECF 82-11, Glazier Corp. Resp. Req. Prod. ¶ 7; ECF 82-10, Abdo Resp. Req. Prod. ¶¶ 16-17.) Plaintiff says defendants improperly excluded information pertaining to the Additional Glazier Entities from

---

[5] Plaintiff also seeks to compel compliance with request for production 21 to Abdo, but his response to that request is that he would produce non-privileged responsive documents. (*See* ECF 82-10 ¶ 21.)

6

their production. As discussed above, information pertaining to the Additional Glazier Entities is, at least for now, relevant to this case. Thus, defendants must produce the requested information for those entities.

Moreover, plaintiff contends that defendants produced few financial records for the HGB Entities, and she asks that defendants be compelled to produce balance sheets, profit-and-loss statements, and year-end general ledger reports for those entities from QuickBooks or to produce their native QuickBooks file. Defendants say complying with this request would require them to create financial records that do not exist and "cannot be generated with a simple database query." (ECF 86 at 5-6.) Further, defendants say that "[they] have *already produced* every financial record [of the HGB Entities] available to them." (*Id.* at 4) (emphasis in original). Given these representations, the Court denies plaintiff's motion with respect to the HGB Entities' financial records.

Plaintiff also seeks production of "[a]ll loan applications for any loan undertaken by any [HGB Entity], Glazier Corp., or any Glazier Entity," and "[d]ocuments sufficient to identify all instances where a property owned by any Bird or any Glazier Entity was used as collateral for any loan made for an entity other than the entity that owned the collateral." (ECF 82-11, Glazier Corp. Resp. Req. Prod. ¶ 8; ECF 82-10, Abdo Resp. Req. Prod. ¶¶ 7, 18; ECF 82-9, Joshua Resp. Req. Prod. ¶¶ 23, 39.) Plaintiff contends that these documents will show: (1) "the assets Defendants represented to third parties as belonging to the AJJ Trust—including potentially assets Defendants now claim the Trust does not own;" (2) "the value ascribed to [the AJJ Trust] assets that served as collateral for loans;" and (3) whether defendants used "AJJ Trust assets as collateral for loans without any benefit to the AJJ Trust," and if so, what portion of the income or sale from the property is due to the AJJ Trust. (ECF 82 at 11.) Defendants say they have produced "*every*

7

*available sale, purchase, appraisal valuation, and lease record* for every HGB Partnership property" (ECF 86 at 7) (emphasis in original), which are more reliable measures of property value than loan applications. But the documents defendants have produced will not show whether defendants used AJJ Trust assets as collateral for loans that did not benefit the Trust or the value defendants ascribed to any AJJ Trust asset they pledged for collateral.[6] Because that information is relevant to plaintiff's claims, defendants must produce it.

Plaintiff further seeks production of "[a]ll documents and communications regarding any valuation or appraisal of Glazier Corp. and/or its partnership interests." (ECF 82-9, Joshua Resp. Req. Prod. ¶ 49; ECF 82-11, Glazier Corp. Resp. Req. Prod. ¶ 11; ECF 82-10, Abdo Resp. Req. Prod. ¶ 26.) She says these documents are necessary "[t]o establish the adequacy of consideration given to the AJJ Trust for purported adjustment to its membership interests in various LPs." (ECF 82 at 11.) Defendants say they have produced all valuation documents for the HGB Entities, and plaintiff does not explain how appraisals of Glazier Corp. and its partnership interests will shed light on the consideration issue. Accordingly, this portion of plaintiff's motion is denied.

Next, plaintiff seeks production of "[a]ll documents and communications relating to the transaction whereby certain assets of Glazier Corp. were sold to, and certain liabilities were assumed by BCI Holdings LLC in or around September 2019," and "[a]ll documents relating to the valuation and/or any determination as to the amount of Glazier Corp. assets and liabilities that were transferred to BCI Holdings LLC." (ECF 82-9, Joshua Resp. Req. Prod. ¶¶ 53, 54; ECF 82-11, Glazier Corp. Resp. Req. Prod. ¶¶ 21-22; ECF 82-10, Abdo Resp. Req. Prod. ¶ 30.) In addition, plaintiff seeks Glazier Corp.'s response to the following interrogatory:

---

[6] Defendants say they could not have pledged property of the AJJ Trust as collateral for any loan because the Trust did not own any real estate. (*See* ECF 86 at 7 (citing ECF 86-6, P.'s Prenuptial Agreement at J-45-46.) However, plaintiff's requests seek information about the use of AJJ Trust assets, not just real property.

8

> Identify any assets or liabilities of Glazier Corp. that were not sold or assumed by BCI Holdings LLC. For any such assets or liabilities, state whether Glazier Corp. continues to retain such assets and/or liabilities. To the extent such assets or liabilities have been transferred or disposed of since the transaction with BCI Holdings LLC, state when such transfers or dispositions occurred and to whom such transfers or dispositions were made.

(ECF 82-14, Glazier Corp. Ans. Interrog. 10.) Plaintiff says the BCI Agreement, which defendants produced, "ascribes specific values to assets in which the AJJ Trust indisputably had an interest, and others in which AJJ Trust's interest is disputed." (ECF 82 at 12.) Thus, she says, she needs documents "showing how those values were established to prove her claim that the AJJ Trust has been deprived of assets to which it is entitled." (*Id.*)

As defendants point out, however, the BCI Agreement identifies the partnership interests that were sold and states that the value for each property held by each partnership was based on an appraisal or actual purchase price. (*See* ECF 86-6, BCI Agreement, Ex. A-2.) Because defendants say they have produced the appraisals and purchase/sale records, plaintiff has the information she needs to determine how the values were established. Thus, plaintiff's motion in this regard is denied.

Plaintiff also asks the Court to compel Glazier and Abdo to produce documents responsive to this request:

> All communications between [Daniel Abdo and Joshua Glazier] regarding the Litigation, any allegation in the Complaint, the subject matter of any Affirmative Defense to the Complaint asserted by any of the Defendants in the Litigation, and/or subject matter of the Complaint (including, without limitation, the AJJ Trust, a Descendant's Trust, Glazier Corp., GlazCo, Hutchinson, the Birds, the Glazier Entities, and the Eggert Report).

(ECF 82-9, Joshua Glazier Resp. Req. Prod. ¶ 62; ECF 82-10, Abdo Resp. Req. Prod. ¶ 32.) The parties' meet-and-confers narrowed the dispute to communications concerning: LP interests or LLC membership interests; the switch from using partnerships to using LLCs for real estate projects; Jordan Glazier; Abdo's compensation for or time spent in work with/for Joshua and/or

Glazier Corp.; Abdo's work for any company or projects that did not involve Joshua and/or Glazier Corp.; and K-1s, 1099s or W-2s. (ECF 82 at 13.) Defendants say communications regarding three of the narrowed topics—the switch from using partnerships to using LLCs for real estate projects, Jordan Glazier, and K-1s, 1099s or W-2s—are irrelevant. Plaintiff says the switch from partnerships to LLCs bears on her claim that defendants made the change to try to defeat the Inclusion Requirement. But the Inclusion Requirement does not exempt projects performed in an LLC, so defendants' switch to LLCs has no bearing on the applicability of that Requirement. Moreover, plaintiff does not explain how communications about Jordan Glazier, K-1s, 1099s or W-2s bear on this suit.

The remaining topics—communications about LP interests or LLC membership interests, Abdo's compensation for or time spent in work with/for Joshua and/or Glazier Corp., and Abdo's work for any company or projects that did not involve Joshua and/or Glazier Corp.—seek relevant information, but defendants argue that these requests are overly broad and unduly burdensome because responding to them would require them to sort through the 77,000 emails Joshua and Abdo exchanged. As discussed above, however, "the mere fact that a party will be required to expend a considerable amount of time, effort, or expense in answering the discovery requests is not a sufficient reason to preclude discovery." *Boyer*, 2008 WL 4911267, at *5. Thus, defendants must comply with these requests.

Plaintiff also wants defendants to produce "[c]opies of every report furnished to You as Partner of any Bird or and Glazier Entity that contained information with respect to the partnership to be used in preparing Your federal and state income tax returns." (ECF 82-9, Joshua Glazier Resp. Req. Prod. ¶ 20; ECF 82-11, Glazier Corp. Resp. Req. Prod. ¶ 19; ECF 82-10, Abdo Resp. Req. Prod. ¶ 20.) Defendants say they do not have responsive documents. (ECF 86 at 6-7.)

Because the Court cannot order defendants to produce documents they do not have, plaintiff's motion with respect to these requests is denied.

Plaintiff's final request is for defendants to serve updated interrogatory answers. Defendants say they did so after this motion was filed. The Court, therefore, denies as moot this portion of plaintiff's motion.

### Conclusion

For the reasons set forth above, the Court grants in part and denies in part plaintiff's motion to compel [ECF 82]. Defendants has fourteen days from the date of this Memorandum Opinion and Order to produce the documents in accordance with this Order.

**SO ORDERED.**                     **ENTERED:**

**DATED: 11/29/23**

                                    **M. David Weisman**
                                    **United States Magistrate Judge**